FILED & ENTERED

MAR 02 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY RUST        DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# NORTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case. No. 9:11-bk-14487-PC |
| | ) | |
| CHARLENE M. MILBY, | ) | Adversary No. 9:14-ap-01132-PC |
| | ) | |
| | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | **MEMORANDUM REGARDING** |
| PATRICIA A. TEMPLETON, <u>et al.</u>, | ) | **DEFENDANTS' MOTIONS FOR** |
| | ) | **SUMMARY JUDGMENT OR,** |
| | ) | **ALTERNATIVELY, FOR PARTIAL** |
| | ) | **SUMMARY JUDGMENT** |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | Date:  February 12, 2015 |
| JON A. MILBY, <u>et al.</u>, | ) | Time:  10:00 a.m. |
| | ) | Place:  United States Bankruptcy Court |
| | ) | Courtroom # 201 |
| Defendants. | ) | 1415 State Street |
| | ) | Santa Barbara, CA  93101 |

At the above captioned date and time, the court considered the Defendants' Motion for

Summary Judgment or, Alternatively, for Partial Summary Judgment [Dkt # 14] filed by

Defendants, Jon A. Milby, D&J Trucking Company, Inc., Sandra Holder Milby, Sanjon, Inc.,

and 5th Street Condo, LLC. on November 4, 2014, and the Defendants' Motion for Summary

Judgment or, Alternatively, for Partial Summary Judgment [Dkt # 21] filed by Defendants,

Charlene M. Milby and Charlene's Transportation, Inc. on November 19, 2014 (collectively,

Defendants' Motions"), together with Plaintiffs' Combined Opposition to Defendants' Motions

for Summary Judgment or, Alternatively, Partial Summary Judgment [Dkt # 35]  filed on

January 15, 2015 ("Plaintiffs' Opposition").  Having considered Defendants' Motions, Plaintiffs'

Opposition, the summary judgment record,[1] and argument of counsel, the court will grant

Defendants' Motions with respect to the claims made the basis of Plaintiffs' Complaint to Avoid

and Recover Unlawful Conveyances and Transfers Arising Out of:  (1) Fraudulent Transfers

Under California Civil Code § 3439.04(a)(1); (2) Fraudulent Transfers Under California Civil

Code §§ 3439.04(a)(2) and 3439.05; (3) Aiding and Abetting in Fraudulent Transfers Under 11

U.S.C. § 544(b) and California Civil Code §§ 3439.04(a)(1), 3439.04(a)(2), and 3439.05; and (4)

---

[1]  The summary judgment record consists of the following:  (1) Defendants' Motions; (2)
Defendants' Separate Statement of Undisputed Facts and Conclusions of Law [Dkt # 15]; (3)
Request for Judicial Notice in Support of Defendants' Motion for Summary Judgment or,
Alternatively, for Partial Summary Judgment [Dkt # 16]; (4) Appendix to Defendants' Motion
for Summary Judgment or, Alternatively, for Partial Summary Judgment [Dkt # 17]; (5)
Defendants' Separate Statement of Undisputed Facts and Conclusions of Law [Dkt # 24]; (6)
Request for Judicial Notice in Support of Defendants' Motion for Summary Judgment or,
Alternatively, for Partial Summary Judgment; Exhibits 1 through 11 ("Defendants' RJN") [Dkt #
25]; (7) Appendix to Defendants' Motion for Summary Judgment or, Alternatively, for Partial
Summary Judgment [Dkt # 26]; (8) Plaintiffs' Opposition; (9) Plaintiffs' Separate Statement in
Response to Defendants Charlene M. Milby and Charlene's Transportation, Inc.'s Separate
Statement of Undisputed Facts [Dkt # 41]; (10) Plaintiffs' Separate Statement in Response to
Defendants Jon A. Milby, D&J Trucking Company, Inc., Sandra Holder Milby, Sanjon, Inc., and
5th Street Condo, LLC's Separate Statement of Undisputed Facts [Dkt # 42]; (11) Declaration of
Daniel J. McCarthy in Opposition to Motions for Summary Judgment [Dkt # 36]; (12)
Declaration of Patricia A. Templeton in Opposition to Motions for Summary Judgment [Dkt #
37]; (13) Declaration of Michael Will in Opposition to Motions for Summary Judgment [Dkt #
38]; (14) Declaration of Carissa N. Horowitz in Opposition to Motions for Summary Judgment
[Dkt # 39]; (15) Declaration of Sandra McBeth in Opposition to Motions for Summary Judgment
[Dkt # 40]; (16) Joint Reply to Combined Opposition to Defendants' Motions for Summary
Judgment or, Alternatively, for Partial Summary Judgment ("Joint Reply") [Dkt # 48]; and
Declaration of Janet K. McGinnis in Support of Joint Reply to Opposition to Summary Judgment
[Dkt # 49].

Unjust Enrichment ("Complaint") based on the following findings made pursuant to F.R.Civ.P.

56,[2] as incorporated into FRBP 7056 and applied to contested matters by FRBP 9014(c).

A. Standard for Summary Judgment.

    1.  Rule 56(a) authorizes a party to "move for summary judgment, identifying each claim

or defense – or the part of each claim or defense – on which summary judgment is sought."

F.R.Civ.P. 56(a). Summary judgment must be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Id.

    2.  In determining whether a genuine factual issue exists, "a trial judge must bear in mind

the actual quantum and quality of proof necessary to support liability . . . ." Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 254 (1986). "[T]he judge's function is not himself to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial . . . . If the evidence is merely colorable, or is not significantly probative, . . . summary

judgment may be granted. Id. at 249–250.  However, the court's function on a motion for

summary judgment is "issue-finding, not issue-resolution." United States v. One Tintoretto

Painting Entitled "The Holy Catholic Family With Saint Catherine and Honored Donor, 691 F.2d

603, 606 (2d Cir. 1982).

    3.  Rule 56 does not permit "trial on affidavits.  Credibility determinations, the weighing

of the evidence, and the drawing of legitimate inferences from the facts are [fact finder]

functions . . . ." Anderson, 477 U.S. at 255.

    4.  Rule 56(c), which identifies the procedures the court and parties must follow in

conjunction with motions for summary judgment, states:

---

    [2]  Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).  "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P.").  "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

(1) **Supporting Factual Positions**. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

    (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

    (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) **Objection That a Fact Is Not Supported by Admissible Evidence**. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) **Materials Not Cited**. The court need consider only the cited materials, but it may consider other materials in the record.

(4) **Affidavits or Declarations**. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

F.R.Civ.P. 56(c). The court may grant summary judgment "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)." See F.R.Civ.P. 56(e)(3).

    5. The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex v. Catrett, 477 U.S. 317, 323 (1986). "Once the moving party carries its initial burden, the adverse party 'may not rest upon the mere allegations or denials of the adverse party's pleading,' but must provide affidavits or other sources of evidence that 'set forth specific facts showing that there is a genuine issue for trial.' " Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting former F.R.Civ.P. 56(e)); see Celotex, 477 U.S. at 323-24.

    6. When the nonmoving party has the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325; see Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 532 (9th Cir. 2000) (stating that the Celotex showing can be made by "pointing out through argument-the

absence of evidence to support plaintiff's claim"). If the nonmoving party fails to establish a triable issue "on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323.

7. "If the court does not grant all the relief requested by the motion, it may enter an order stating that any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case. F.R.Civ.P. 56(g).

8. The court may, after notice and a reasonable opportunity to respond, grant summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute. F.R.Civ.P. 56(f)(3).

B. Defendants' Contentions.

Defendants assert that the First, Second and Third Claims for Relief set forth in Plaintiffs' Complaint are barred by statute of limitations for avoidance actions set forth in 11 U.S.C. § 546(a)(1)(A), which states, in pertinent part, that "[a]n action or proceeding under section 544, 545, 547, 548, or 553" of the Bankruptcy Code may not be commenced "2 years after the entry of the order for relief."[3] Defendants contend that the two-year limitations period under 11 U.S.C. § 546(a)(1) is applicable to Plaintiffs' claims and that it expired on September 22, 2013 – two years after the order for relief entered on September 22, 2011.[4] Defendants further contend that equitable tolling does not apply to extend the limitations period because

---

[3] Section 546(a) states that "[a]n action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of –

    (1) the later of –
        (A) 2 years after the entry of the order for relief; or
        (B) 1 year after the appointment or election of the first trustee
        under section 702, 1104, 1163, 1202, or 1302 of this title if such
        appointment or election occurs before the expiration of the period
        specified in subparagraph (A); or
    (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).

[4] Defendants' Motions, 8:24-9:9; 6:21-7:4;

Plaintiffs' "Complaint contains no allegation even suggesting an extraordinary circumstance that would give rise to equitable tolling."[5]  According to Defendants:

> The record documents a diligent, experienced Trustee who performed customary and required duties to marshal the Estate, who elected to pursue some transfers and not others.  The record shows knowing waivers and releases, and authorized, voluntary, intentional, and legally significant decisions and omissions.  Nothing in the record hints at an extraordinary circumstance allowing for equitable tolling.[6]

Finally, Defendants seek summary judgment dismissing Plaintiffs' Fourth Claim on two grounds:  (1) Plaintiffs' "claim for unjust enrichment only reiterates their three other claims' allegations and charging statutes" and therefore, should be barred under 11 U.S.C. § 546(a)(1);[7] and (2) unjust enrichment is an equitable remedy and not a separate cause of action under California law.[8]

C.  Undisputed Facts.

Defendants contend, and the court agrees, that the following facts are either not genuinely in dispute or otherwise established by the summary judgment evidence:

1.  On September 22, 2011, Charlene M. Milby ("Debtor") filed a voluntary petition under chapter 7 of the Bankruptcy Code.

2.  Sandra K. McBeth ("McBeth") was appointed as trustee of the Debtor's bankruptcy estate.

3.  On October 12, 2012, McBeth filed a Motion for Approval Compromise of Claim [Dkt # 48] seeking court approval of a settlement between McBeth and Jon A. Milby / D&J Trucking Co., Inc. of an alleged preference claim for the sum of $7,500.

4.  In her declaration in support of the motion, McBeth stated, in pertinent part:

2.  The original Statement of Financial Affairs filed in this case fails to identify the payment from the Debtor's personal account at Community West Bank to Jon

---

[5] Id. at 10:25-27; 7:22-23.

[6] Id. at 12:8-14; 8:22-26.

[7] Id. at 13:20-21; 9:18-19.

[8] Id. at 14:4-7; 9:26-28.

A Milby/D&J Trucking Co., Inc. on June 30, 2011. The amended Statement of Financial Affairs filed in this case on November 2, 2011 also fails to identify the payment. . . . John [sic] A. Milby is the Debtor's father.

3. I requested bank records from the Debtor during the course of my investigation, and the bank statement for June, 2011 for the Debtor's personal account at Community West Bank identified a $10,000.00 payment made to her father and/or her father's wholly owned company D&J Trucking Co., Inc. on June 30, 2011.

4. I thereafter made demand upon John [sic] A. Milby and D&J Trucking Co., Inc. for return of this preferential payment. If no settlement was reached, I would thereafter file an adversary proceeding to recover this amount.

5. After investigating the facts and discussing the matter with John [sic] A. Milby's counsel, we were able to reach a settlement and avoid the necessity of litigation. We agreed to payment to the estate of the sum of $7,500.00, which was received on October 5, 2012. These funds have been deposited into my account maintained for the benefit of this bankruptcy estate pending approval of this agreement.

6. I believe this compromise is in the best interests of the creditors of this estate, as the funds have been received, and no additional costs of litigation or collection will be incurred or necessary, which in my opinion, would clearly exceed the $2500.00 reduction in the preference claim.

5. A Settlement Agreement and Mutual Release executed by McBeth on October 5, 2012, is attached as Exhibit B to McBeth's declaration in support of the motion. The Settlement Agreement and Mutual Release states, in pertinent part:

B. Jon Milby is the Debtor's father. Jon Milby owns and operates D&J Trucking Company.

C. On or about June 30, 2011, Debtor caused a payment in the sum of $10,000.00 to be made to Jon Milby and/or his wholly owned company, on account of an antecedent debt. Said payment was made from an account maintained at Community West Bank, Account Number 1500449 held in the name of Charlene Milby dba Charlene's Transportation.

D. Sandra K. McBeth, Chapter 7 Trustee has made demand upon Jon Milby for the return of this payment on the grounds it is a preferential payment to an insider within one year of the commencement of the case under 11 U.S.C. § 547(b). Jon Milby disputes the claim.

6.  On October 31, 2012, an Order on Motion for Approval Compromise of Claim [Dkt # 55] was entered in the case approving the settlement between McBeth and Jon A. Milby / D&J Trucking Co., Inc., with findings that no opposition had been filed, due notice had been given, and good cause supported the order.

7.  On September 19, 2013, McBeth filed a complaint against Jon A. Milby and D&J Trucking Company in Adversary No. 9:13-ap-01153-PC, <u>McBeth v. Jon A. Milby, et al.</u>, seeking to avoid and recover alleged fraudulent conveyances, preferential transfers, and unauthorized post-petition transfers.

8.  In the complaint, McBeth alleged, in pertinent part:

6.  Debtor operated the business Charlene's Transportation at the time the Chapter 7 case was commenced on September 22, 2011.  Although a corporation (Charlene's Transportation, Inc.) was formed in or around 2004, as late as the commencement of this bankruptcy case and thereafter, Charlene's Transportation was also conducting business as a sole proprietorship, including the maintenance of a bank account at Community West Bank, entitled Charlene Milby dba Charlene's Transportation, account ending in 0449, and that there was truly no distinction made by Debtor between the accounts or entities when operating Charlene's Transportation.

7.  Plaintiff is informed and believes and based thereon alleges that Defendant Jon A. Milby is and was, at all times herein relevant, a signatory on Debtor's account at Community West Bank ending in number 0449.

8.  Plaintiff is informed and believes and based thereon alleges that Defendant Jon A. Milby, also Debtor's father, owned, operated and controlled D&J Trucking Company at all relevant times herein.

9.  Plaintiff is informed and believes and based thereon alleges that Defendant Milby owns and controls Sanjon, Inc., a California Corporation doing business as Del Sol Santa Barbara.

9.  In her First Claim for Relief, McBeth alleged "that in or around April, 2010, Debtor transferred to Defendant Milby the sum of $15,000.00 and did not receive reasonably equivalent value for this payment and further, that Debtor was insolvent at the time the payment was made or became insolvent as a result of making the payment."  McBeth further alleged "that at the time of the payment to Defendant Milby, there were creditors of Debtor which arose before and after this payment was made."  McBeth claimed that "[t]he payment of $15,000.00 to Defendant

Milby is voidable under California's version of the Uniform Fraudulent Transfer Act by Debtor's

creditors and, therefore, is avoidable under 11 U.S.C. § 544(b)(1) and California Civil Code §

3439.04 and § 3439.05" and "recoverable by [McBeth] for the benefit of this estate pursuant to

11 U.S.C. § 550."

10.  In her Second Claim for Relief, McBeth alleged "that on or about March 4, 2011,

Debtor caused a payment, through her wholly owned corporation Charlene's Transportation,

Inc., to be made to Defendant Jon A. Milby in the sum of $9758.85, on account of an antecedent

debt allegedly owned [sic] for equipment rental.  Although the ledger of Charlene's

Transportation, Inc. represents this payment was made to Defendant D&J Trucking, in fact, this

payment was made payable to Defendant Jon Milby."  McBeth further alleged that "[s]aid

payment was made to an insider and within one year of commencement of the Chapter 7 case"

and that "Defendant Milby's receipt of this payment allowed him to receive more than he would

have received if the payment had not been made and more than he would have received in this

Chapter 7 case as provided under Title 11 of the United States Code."

11.  In her Third Claim for Relief, McBeth alleged that "[o]n or about June 6, 2012, a

check payable to 'Charlene's Transportation' from Del Sol in the sum of $4264.55 was deposited

into Charlene's Transportation corporate account, although the payment made no reference to the

corporate entity.  Immediately thereafter, and on or about June 11, 2011, Charlene's

Transportation, Inc., by Charlene Milby, issued a check payable to Defendant Milby in the sum

of $4264.55."  McBeth further alleged that the payment "is an unauthorized post-petition transfer

by Debtor and is avoidable by [McBeth] pursuant to 11 U.S.C. § 549, and recoverable for the

benefit of the estate pursuant to 11 U.S.C. § 550."

12.  In her Fourth Claim for Relief, McBeth alleged "that between December, 2011 and

January 2013, Defendant D&J Trucking received unauthorized post-petition payments from

Debtor and from property of the estate through Debtor's business, in the sum of approximately

$49,000.00 . . . ."  McBeth further alleged that "Defendant D&J Trucking received each such

payment as a result of a plan or scheme involving Debtor and Defendant Milby and his various

business entities over which he exercised complete control whereby a check was made payable

to Charlene's Transportation (not Charlene's Transportation, Inc.) primarily from Del Sol and which was then deposited into the account of Charlene's Transportation, Inc." McBeth further alleged that "a check was issued from this account for the same amount to D&J Trucking and over the course of slightly more than a year, Defendant D&J Trucking received in excess of $49,000.00." McBeth claimed that "[s]aid payments were unauthorized post-petition transfers which are avoidable by [McBeth] pursuant to 11 U.S.C. § 549, and recoverable by [McBeth] of [sic] the benefit of the estate pursuant to 11 U.S.C. § 550."

13.   In her Fifth Claim for Relief, McBeth alleged "that in or around July 2011, Debtor and Defendant D&J Trucking jointly entered into an agreement with Ritchie Bros. Auctioneers to auction a 2000 Dump Trailer, which was in fact auctioned in August, 2011 for a gross price of $9,000.00." McBeth further alleged that "Debtor instructed Ritchie Bros. to make the check payable to D&J Trucking Company," and that a check payable to D&J Trucking representing the net proceeds of $6275.00 from the auction "was in fact deposited into Debtor's account (Charlene Milby dba Charlene's Transportation) on or about August 23, 2011." McBeth further alleged that "on August 30, 2011, a check was written from this account to Jon Milby, which check was also signed by Jon Milby, in the sum of $6275.00." McBeth claimed that "[t]hese proceeds are property of the bankruptcy estate pursuant to 11 U.S.C. § 541 and should be immediately turned over pursuant to 11 U.S.C. § 542."

14.   McBeth did not amend her complaint in Adversary No. 9:13-ap-01153-PC.

15.   On May 1, 2014, McBeth filed a Motion for Approval of Compromise [Dkt # 84] in which she sought approval of a Settlement Agreement and Mutual Release executed by McBeth and Jon A. Milby, Individually and as President of D&J Trucking Company, dated April 29, 2014, settling the disputed claims made the basis of Adversary No. 9:13-ap-01153-PC for the sum of $25,000.

16.   In her motion, McBeth stated, in pertinent part:

This adversary proceeding commenced by [McBeth] on September 19, 2013 involves claims against both Defendants for alleged fraudulent transfers, preferential transfers and unauthorized post-petition transfers received by the Defendants. Defendant Jon Milby is the Debtor's father. Defendant D&J

Trucking Company, A California Corporation, is owned by Jon Milby.  Before and after this case was filed, Defendants both received payments by or on behalf of the Debtor in this case, and more specifically, by and through Debtor's business Charlene's Transportation.  This business is sometimes operated as a sole proprietorship and was incorporated in or around January 2004, and is operated in that manner in other instances.  Defendant Jon Milby had authority and control over Debtor's business accounts throughout the time alleged in the Complaint, and was the sole owner and operator of Defendant D&J Trucking, A California Corporation. . . .

Defendants dispute all claims but the second.  Defendants have provided some evidence of their entitlement to the funds, and evidence supporting their argument that the estate is not entitled to the funds.  Defendants' basic contention is that the money they were generating was simply passed through Debtor's business accounts, and that Debtor's business was not generating these funds.  What is unclear is the reason for this arrangement. . . .

The Settlement Agreement and Mutual Release resolves the dispute by immediate payment of the sum of $25,000.00 to the bankruptcy estate and dismissal with prejudice of the adversary proceeding, including a full waiver of all claims.

17.  McBeth's motion asserted that "[t]he parties have done substantial disclosure and discovery in terms of document production, and any further discovery would likely involve numerous depositions.  Initial disclosures have been submitted."

18.  McBeth's points and authorities in the motion state, in part:  "[T]he probability of success in the litigation is very high with regard to the first two claims for relief.  However, there is some question as to the post-petition transfers and whether Debtor or Debtor's business were ever entitled to the funds run through the accounts to begin with.  Although the facts surrounding why Defendants chose to handle the payments and funds in this manner remain something of a mystery, the banking documents are quite clear:  the money that came into the Debtor's business accounts came from or on account of Defendants, and was quickly paid back to them.  The funds at issue in these two claims for relief do not appear to have been generated by the Debtor or Debtor's business.  The final claim for relief is a bit clearer, but the likelihood of success for the full amount is questionable.  It is more likely the amount to be recovered would be approximately 50% of the amount claimed."

19.  In her declaration in support of the motion, McBeth states, in pertinent part:

3.  I have reviewed all of the documents relating to the transactions raised in the adversary proceeding surrounding the alleged fraudulent transfers, preferential transfers, post-petition transfers, and turnover of property of the estate, including but not limited to, correspondence, contracts, bank statements, cancelled checks, deposit slips, etc.

4.  At the time the settlement negotiations began, some discovery had been completed, but in order to pursue the case, I was prepared to schedule several depositions and request production of documents from the Defendants.  Both sides had already completed the initial disclosures.

5.  Based on my review of the documentation surrounding each of the transactions alleged in the Complaint, I believe the terms of the Settlement Agreement and Mutual Release are fair and reasonable, and are in the best interests of the estate and its creditors.  The transactions raised in claims four and five are of particular controversy and difficulty.  To proceed to additional discovery and trial on these claims would be time consuming, costly and problematical.

20.  On May 15, 2014, G. Creswell Templeton III and Patricia F. Templeton (the "Templetons") filed an Objection to Motion for Approval of Compromise of Chapter 7 Trustee and Request for Hearing [Dkt # 86].  In their objection, the Templetons objected "to that portion of the release proposed by the settlement that relinquished all claims, whether known or unknown, including those that may not have been pled."  The Templetons further objected to the "scope of the release to the extent that it could be construed to release a) certain third parties, including but not limited to Banks, the Debtor, and the Debtor's wholly owned corporation, and b) claims owned by the Debtor's wholly owned corporation."

21.  On June 26, 2014, McBeth filed Trustee's Reply to Creditors' Objection to Motion for Approval of Compromise of Chapter 7 Trustee [Dkt # 90].  In her reply, McBeth defended the scope of the mutual release asserting that she "clearly investigated all facts even prior to the filing of the Complaint and determined there were no other transactions that should be included in the case."  McBeth further asserted that "[i]f the Creditors have admissible evidence of these facts, rather than just hoping [McBeth] will pursue this indefinitely and without any facts to support, they should have submitted them.  Nothing in the objection supports their argument."

22.  In the declaration in support of her reply, McBeth stated that during the course of her investigation she had (1) reviewed bank records of the Debtor and her businesses, Charlene's Transportation and Charlene's Transportation, Inc., and those of D&J Trucking and Jon Milby;

(2) received a copy of a residential lease agreement and grant deed for property located at 317 E. Fifth Street, Solvang, CA which identifies the owner as D&J Trucking, Inc., not Charlene Milby or Charlene's Transportation; and (3) reviewed the checks from Del Sol, deposits and transfers thereof in and out of the Charlene's Transportation, Inc. account.  McBeth further stated that she "filed this Complaint based upon information provided to me by the Creditors objecting to this settlement, as well as documentation and information [she] had obtained throughout the course of administration of this case."

23.  On September 15, 2014, the court entered an Order on Trustee's Motion for Approval of Compromise [Dkt # 105].  The order granted McBeth's motion and approved the compromise and Settlement Agreement and Mutual Release executed by McBeth and Jon A. Milby, Individually and as President of D&J Trucking Company, dated April 29, 2014, settling the disputed claims made the basis of Adversary No. 9:13-ap-01153-PC, subject to certain limitations, including the following:

> 2.  Notwithstanding the language of the settlement agreement, including without limitation the language of paragraph 1 of that agreement (and based upon the agreement of [McBeth], Jon Milby and D&J Trucking LLC, as parties to the settlement agreement, and the consent of [the Templetons], as the only parties objecting to the settlement agreement . . . ), no later than thirty (30) days after entry of this Order, Jon A. Milby and D&J Trucking Company shall pay to [McBeth] the sum of $30,000.00 in the form of a cashier's check or money order, delivered to [McBeth] . . . , rather than the sum of $25,000.00 stated in paragraph 1 of the settlement agreement, in consideration for the scope of the releases including the transfers described herein below in paragraphs 3.D.1 and 3.D.4(b).
>
> 3.  Notwithstanding the language of the settlement agreement, including without limitation paragraphs 5 and 7 of that agreement . . .
>
> > A.  The scope of the releases by [McBeth] under that agreement, both as trustee and plaintiff and on behalf of the Charlene Milby Bankruptcy Estate, shall be limited to releasing Jon Milby, D&J Trucking, LLC ("D&J"), and their respective affiliates and insiders, including Sandra Holder Milby, Sanjon, Inc. ("Sanjon"), and 5th Street, LLC ("5th Street"), only from any and all claims arising out of the specific transfers (the "Transfers") alleged in the complaint in adversary no. 9:13-ap-01153, and shall not operate to release or waive any other claims against them.

B.  The scope of the releases by [McBeth] under that agreement,
both as trustee and plaintiff and on behalf of the Charlene Milby
Bankruptcy Estate, shall not extend to Charlene M. Milby
("Debtor"), Rex T. Rossoll, Charlene's Transportation, Inc.
("CTI"), Double R Cutting Horse, LLC, or any of their respective
affiliates or insiders, other than Jon Milby, D&J, Sandra Holder
Milby, Sanjon, and 5th Street.

C.  The term "affiliate" and "insider," as used in paragraph A and
B above, shall have the meaning set forth in 11 U.S.C. § 101.

D.  The terms "Transfers," as used in paragraph A above, shall
mean the  . . . transfers, deposits and checks that are the subject of
the five claims for relief in adversary no. 9:13-ap-01153. . . .

24.  On September 16, 2014, a Stipulation for Creditors to Pursue Claims on Behalf of
the Estate [Dkt # 106] was filed in the case.

25.  Paragraph C of the Stipulation states, in part, that "[t]hrough counsel, on September
18, 2013, the Templetons informed [McBeth] of the transfers as funds to which the Estate may
have claims for fraudulent transfers and for the diversion of corporate funds of Charlene's
Transportation, Inc. ("CTI") against Jon Milby, D&J Trucking Company ("D&J"), Sandra
Holder Milby, Sanjon, Inc. ("Sanjon"), 5th Street, LLC ("5th Street"), and affiliated parties,
successors, assigns and potential alter egos (collectively, the "Milby Parties") and against
Community West Bank relating to the transfers.  Since then, the Templetons have discovered
other such Transfers that they have brought to [McBeth's] attention."

26.  Paragraph E of the Stipulation states that "[McBeth], however, elected not [to]
pursue claims relating to the Transfers of other funds to which the Estate may have claims
against the Milby Parties, primarily because [McBeth] concluded that the costs to the Estate of
pursuing those claims outweighed the potential benefits of the adversary proceedings that would
have been required to pursue those claims."

27.  On September 16, 2014, an Order Approving Stipulation for Creditors to Pursue
Claims on Behalf of the Estate was entered in the case which stated, in pertinent part, that "[t]he
Templetons are authorized to file and prosecute such adversary proceedings in this Court and, to
the extent necessary, in the United States District Court for the Central District of California, as

they deem necessary to pursue claims (collectively, the "Claims") on behalf of the Estate, either directly or indirectly or derivatively on behalf of Charlene's Transportation, Inc. ("CTI") against Jon Milby, D&J Trucking Company, Sandra Holder Milby, Sanjon, Inc., 5th Street, LLC, and affiliated parties, successors, assigns and potential alter egos (collectively, the "Milby Parties") and against Community West Bank relating to any transfers or to the diversion of CTI's corporate funds in which Charlene M. Milby (the "Debtor") or the Debtor's Chapter 7 estate (the "Estate") had or may have any interest, other than those transfers that are the subject of adversary proceeding no. 9:13-ap-01153-PC and those alleged assets of the Estate that are the subject of adversary proceeding no. 9:13-ap-01152-PC.

28.  On October 14, 2014, an Order on Stipulation for Dismissal of Adversary Proceeding was entered in Adversary No. 9:13-ap-01153-PC dismissing the adversary proceeding with prejudice.

29.  On September 17, 2014, the Templetons filed their complaint against the Defendants in this adversary proceeding.

30.  In the complaint, "Plaintiffs allege four claims:  (1) fraudulent transfers under 11 U.S.C. §544(b) <u>and</u> California Civil Code § 3439.04(a)(1) (actual fraud); (2) fraudulent transfers under 11 U.S.C. §544(b) <u>and</u> California Civil Code § 3439.04(a)(2) (constructive fraud) and § 3439.05 (debtor insolvent); (3) aiding and abetting the fraudulent transfers alleged; and (4) unjust enrichment;"[9]

31.  Plaintiffs admit that "[a]bsent tolling, the trustee (or, in this case, plaintiffs) could have timely filed fraudulent transfer claims on behalf of the estate under Civil Code  § 3439.04(a)(1), § 3439.04(a)(2), and § 3439.05 up to and including September 22, 2013, two years after the order for relief."[10]

---

[9]  Plaintiffs' Opposition, 5:24-27 (emphasis added).

[10] <u>Id.</u> at 9:19-21.

D.  Defendants' Motions for Summary Judgment Will Be Granted on Plaintiffs' First, Second and Third Claims for Relief With Respect to the Alleged Transfers Identified in Paragraphs 31 Through 35 of Plaintiffs' Complaint With Leave to Amend

Plaintiffs' First and Second Claims for Relief, each by their respective terms, invoke § 544(b) and, through § 544(b), California's Uniform Fraudulent Transfer Act ("CUFTA"), to avoid 18 or more transfers from various bank accounts, both pre-petition and post-petition, as fraudulent transfers within the scope of § 544(b) and applicable state law.

Section 544(b)(1) states, in pertinent part:

> [T]he trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 . . . or that is not allowable only under section 502(e) . . . .

11 U.S.C. § 544(b)(1) (emphasis added).  In other words, a trustee may avoid transfers or obligations that could have been avoided by an unsecured creditor under applicable non-bankruptcy law had the bankruptcy case not been filed, provided such a creditor actually exists.

CUFTA's § 3439.04(a)(1) states that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with the actual intent to hinder, delay, or defraud any creditor of the debtor.  Cal. Civ. Code § 3439.04(a)(1).  CUFTA's § 3439.04(a)(2) further states that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

> (A) Was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
> (B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

16

Cal. Civ. Code § 3439.04(a)(2).  Finally, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation.  Cal. Civ. Code § 3439.05.

According to the summary judgment record, the only transfers alleged in the First Claim for Relief that could constitute a "transfer of an interest of the debtor in property" within the scope of § 544(b) are the 12 transfers from the 0449 Account in the name of "Milby, Charlene dba Charlene's Transportation" identified in paragraph 30 of the complaint.  The balance of the transfers, as alleged in paragraphs 31 through 35 of the complaint, are not subject to avoidance under § 544(b) as fraudulent, either actually or constructively, pursuant to CUFTA as a matter of law because they do not involve a "transfer of an interest of the debtor in property" by the terms of the complaint.  Plaintiffs' Third Claim for Relief for "aiding and abetting" such transfers fails for the same reason.

In Plaintiffs' Opposition, Plaintiffs sought to embellish the complaint's plain terms by asserting that "Plaintiffs' first two claims for relief <u>also</u> include fraudulent transfer claims brought on behalf of the estate both directly and derivatively as a CTI shareholder."[11]  Plaintiffs further hedged in their summary judgment response, stating:

> Plaintiffs' claims have two categories.  The first involves pre-petition fraudulent transfers of monies from the <u>debtor's 0449 Account</u>, which are identified in paragraphs 30(a) to 30(l).  The second, brought as shareholder derivative claims and claims for distributions that should have been made to the estate, concerning pre- and post-petition fraudulent transfers from CIT's 5226 Account and of CIT property, which are identified in paragraphs 31 through 37.[12]

At the hearing, Plaintiffs' counsel argued that Plaintiffs' complaint placed Defendants on sufficient notice for purposes of a motion for summary judgment that Plaintiffs were <u>not</u> seeking

---

[11] <u>Id.</u> at 26:17-18.

[12] <u>Id.</u> at 8:4-8 (emphasis in original).

relief in their First, Second and Third Claims for all of the transfers enumerated in the First

Claim for Relief under both § 544(b) and CUFTA, notwithstanding the complaint's reference to

both statutes in the conjunctive, and that Plaintiffs were under no duty to allege the specific

statute or basis in law for the relief sought as to any particular transfer or category of transfers,

citing Alvarez v. Hill, 518 F.3d 1152 (9th Cir. 2008).

Rule 8 requires that a complaint state a claim for relief, and that claim must include,

among other things, "a short and plain statement of the claim showing that the pleader is entitled

to the relief." Fed.R.Civ.P. 8(a)(2).  "A complaint guides the parties' discovery, putting the

defendant on notice of the evidence it needs to adduce in order to defend against plaintiff's

allegations." Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000).  "Liberal

pleading does not require that, at the summary judgment stage, defendants must infer all possible

claims that could arise out of facts set forth in the complaint." Gilmour v. Gates, McDonald and

Co., 382 F.3d 1312, 1317 (11th Cir. 2004).  Plaintiffs are correct in their assertion that "[a]

complaint need not identify the statutory or constitutional source of the claim raised in order to

survive a motion to dismiss." Alvarez, 518 F.3d at1157.  However, the complaint must contain

sufficient factual information to show "that the pleader is entitled to the relief requested." See

F.R.Civ.P. 8(a).  Plaintiffs cannot identify the statutory basis for the claims asserted in the

complaint and then seek to change the stated statutory basis for one or more of the claims in

response to a motion for summary judgment.  See, e.g., Gilmour, 382 F.3d at 1314 (Rule 8(a)'s

liberal pleading standard "does not afford plaintiffs with an opportunity to raise new claims at

the summary judgment stage."); Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th

Cir. 1984) ("It is axiomatic that a complaint may not be amended by briefs in opposition to a

motion to dismiss").  "At the summary judgment stage, the proper procedure for plaintiffs to

assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a).  Gilmour,

382 F.3d at 1315.

In their response, Plaintiffs seek leave to amend under Rule 15(a)(2) "to the extent that any of plaintiffs' claims or arguments are deemed by the Court to be insufficiently pled."[13]  Rule 15(a)(2) states, in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed.R.Civ.P. 15(a)(2).  "The court should freely give leave when justice so requires."  Id.  Courts "need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile."  AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951 (9th Cir. 2006).  But absent undue delay, bad faith, futility of amendment, or prejudice to the opposing party, leave to amend has been granted even where the request is made in response to a motion for summary judgment.  See Edwards v. Occidental Chemical Corp., 892 F.2d 1442, 1445-1446 n.2 (9th Cir. 1990).

In this case, there is no reason to believe that Plaintiffs are seeking leave to amend in bad faith.  Nor will an amendment of Plaintiffs' complaint at this time unduly delay the litigation given the fact that a trial has not been set and formal discovery has yet to commence.  The court is not convinced that amendment is futile, and leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment.  Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).  Because the transfers alleged in paragraphs 31 through 35 of the complaint fall outside the ambit of § 544(b) as a matter of law and the court is not convinced that a plausible claim for avoidance of the alleged transfers cannot be pled by amendment under a different theory, Plaintiff's First, Second and Third Claims for Relief will be dismissed as to the alleged transfers identified in paragraphs 31 through 35 of the complaint with leave to amend.

E.  Defendants' Motions for Summary Judgment Will Be Granted on Plaintiffs' First, Second and Third Claims for Relief With Respect to the Alleged Transfers Identified in Paragraph 30 of Plaintiffs' Complaint as Barred by 11 U.S.C. § 546(a)(1)

Section 546(a)(1)(A) states, in pertinent part, that "[a]n action or proceeding under section 544 . . . of the Bankruptcy Code may not be commenced "2 years after the entry of the order for relief."  11 U.S.C. § 546(a)(1)(A).  The order for relief was entered on September 22,

---

[13]  Id. at 35:9-10.

2011.  The applicable limitations period under § 546(a)(1) expired on September 22, 2013,

absent equitable tolling.  Plaintiffs' filed this adversary proceeding on September 17, 2014,

seeking to avoid 18 or more transfers from various bank accounts pursuant to § 544(b) and

CUFTA.  Plaintiffs admit that that the complaint is untimely under §546(a)(1) absent equitable

tolling.[14]

Under federal law, the doctrine of equitable tolling is "read into every federal statute of

limitations."  Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946); Ernst & Young v. Matsumoto

(In re United Ins. Mgmt, Inc.), 14 F.3d 1380, 1385 (9th Cir. 1994).  However, "equitable tolling

is rarely applied and disfavored."  Akers v. Mattei (In re Dugger), 2012 WL 2086562, *7 (9th

Cir. BAP 2012).  "[E]quitable tolling principles are . . . applied 'only sparingly'" because

"'Congress must be presumed to draft limitations periods in light of' equitable tolling principles

which generally apply to statutes of limitations."  Ca. Franchise Tax Bd. v. Kendall (In re Jones),

657 F.3d 921, 926 (9th Cir. 2011) (quoting Young v. United States, 535 U.S. 43, 49-50 (2012).

Furthermore, "[t]he need for finality is an important bankruptcy policy."  Dery v. Rosenberg,

2003 WL 21919267, *10 (E.D. Mich. 2003).

Equitable tolling is applied under federal law in two types of situations: (1) where

defendant's wrongful conduct prevented plaintiff from timely asserting his claim, and (2) where

extraordinary circumstances outside plaintiff's control make it impossible for plaintiff to timely

assert his claim.  Seattle Audubon Soc. v. Robertson, 931 F.2d 590, 595 (9th Cir. 1991), rev'd on

other grounds, 503 U.S. 429 (1992); Amazing Enters. v. Jobin (In re M&L Bus. Mach., Inc.),

153 B.R. 308, 311 (D. Colo. 1993).  Equitable tolling is permitted when it would effectuate: (1)

the policies underlying the statute, and (2) the purposes of the limitations period.  Gurney v.

Arizona Dept. of Revenue (In re Gurney), 192 B.R. 529, 538 (9th Cir. BAP 1996).

Equitable tolling has been applied to extend the limitations period under § 546(a)(1).  See

Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc.), 14 F.3d 1380, 1384 (9th Cir. 1994)

---

[14] Id. at 9:19-21.

(stating that "equitable tolling may, in proper cases, apply to § 546(a)(1) . . . ."). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstances stood in his way." Roberts v. Marshall, 627 F.3d 768, 771 (9th Cir. 2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).  However, "where a party 'remains in ignorance of [a wrong] without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.'" United Ins. Mgmt., 14 F.3d at 1384 (quoting Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350 (1991); see Kearns Motor Co. v. Cimino (In re Dreiling), 233 B.R. 848, 878 (Bankr. D. Colo. 1999).  "Such active concealment can include efforts by the debtor and/or the defendant to mislead the trustee through false responses to discovery, or by making assurances that the subject transaction is not unusual or suspicious." Dreiling, 233 B.R. at 878.

In this case, § 546(a)(1)'s two-year statute of limitations expired on September 22, 2013, absent equitable tolling.  McBeth ultimately learned of the transfers enumerated in paragraph 30 of Plaintiffs' Complaint (the "Subject Transfers") by September 18, 2013.  Defendants admit that McBeth is a "diligent, experienced Trustee."  Defendants do not dispute that McBeth acted diligently as trustee to discover the alleged transfers prior to expiration of the limitations period. However, once McBeth discovered the Subject Transfers, Defendants assert there was  "no extraordinary circumstance [which] obstructed" McBeth as a "diligent, thoughtful, and seasoned Trustee" to take action to pursue avoidance of the Subject Transfers.  Defendants argue that McBeth "elected to pursue some fraudulent transfers and not others before the statute of limitations had expired and elected to not amend her complaint in adversary actions to state more claims based on information that she had received within seven weeks of the filing of her complaint.[15]  Defendants reason that McBeth, having made that election, could not establish "an

---

[15]  Joint Reply, 16:26 – 17:3.

extraordinary circumstance allowing for equitable tolling" and neither can the Plaintiffs as her successors in interest in this proceeding. [16]

Because of the Debtor's egregious conduct, including but not limited to, the failure to schedule assets, false oaths in the schedules and in response to questions at creditors' meetings, and failure to turn over documents and cooperate with the trustee, Debtor was denied a discharge in her bankruptcy case on July 7, 2014.  In her declaration, McBeth explained the difficulties encountered in administering the estate as a result of Debtor's misconduct, stating:

> The identification and pursuit of estate property has been an arduous and expensive process as a result of the overwhelming number of Debtor's false and inconsistent statements in her Schedules, and as amended, and testimony at the meetings of creditors and as a result of the Debtor's lack of cooperation in producing requested documents and providing clear and cohesive answers to my questions.[17]

In particular, Debtor failed to disclose the existence of the 0449 Account in her initial schedules and attempted to further conceal the account through false and evasive answers at the § 341(a) meeting.[18]  Debtor likewise concealed her access to and signatory authority on a D&J account into which many of the transfers from the 0449 Account were made.[19]  Debtor also failed to disclose in her original and amended Statements of Financial Affairs any transfers from her 0449 Account to Jon Milby or any entities controlled by him.[20]

Plaintiffs alleged in their complaint that McBeth had no knowledge of the transfers made the basis of the complaint until September 18, 2013 – 3 days prior to expiration of the limitations period.[21]  In her 1051-page declaration in support of Plaintiffs' Opposition, McBeth testified:

---

[16]  Defendants' Motions, 12:14-17; 8:25-27.

[17]  Declaration of Sandra McBeth in Opposition to Motions for Summary Judgment ("McBeth Decl."), at 16:4-8.

[18]  Id. at 16:9-12.

[19]  Id. at 16:17-21.

[20]  Id. at 16:24–17:5.

5.  I first learned of the existence of possible fraudulent transfers in a meeting between myself and Will Beall, the Templeton's attorney, on September 5, 2013. (the "9/5/13 meeting").

6.  At the meeting, Mr. Beall provided me with a binder consisting of descriptions of assets and transfers that the Templetons believed might be recoverable for the benefit of the estate, as well as some documentation (the "Asset Book") . . .

7.  Either at the 9/5/13 meeting or by September 18, 2013, when he sent me further information by email, Mr. Beall provided me with unbound written descriptions of the Templetons' assessment of Debtor's false statements in her Schedules and Statements of Financial Affairs, but those written descriptions were unsupported by any documentation from the Templetons. . . .

11.  On September 18, 2013, I received an email from Mr. Beall (the "9/18/13 email") which contained the following documents:

    a.  13 pages consisting of copies of 12 pages of bank statements for the Debtor's Community West ("CW") Account ending in no. 0449 (the "CW 0449 Account") for the periods November 30, 2009, to April 30, 2010 (other than for March 2010, which was missing), May 31, 2011, to June 30, 2011, and the month of August 2011 . . .

    b.  A copy of two pages of allegations from the Templetons concerning Debtor's alleged false statements with respect to the Debtor's response to Question 10 of Debtor's amended Statement of Financial Affairs.

    c.  A chart that Mr. Beall informed me was prepared by the Templetons, which stated it had not been double checked for accuracy, alleging transfers from January 2006 through October 2011 from Debtor's CW 0449 Account to accounts that Templetons believed to be owned by Jon Milby or D&J Trucking.

    d.  A chart, also stating it had not been verified for accuracy, totaling the transfers in and out of the CW 0449 Account and purporting to show a net outflow to accounts that the Templetons believed were owned by Jon Milby.

---

[21]  "Upon information and belief, prior to September 18, 2013, [McBeth] had no knowledge of any of the transfers alleged [in the complaint] and, as such, lacked the information necessary to file any of the claims alleged [in the complaint] against the defendants."  Complaint, 7:17-19.

e.  Copies of signature cards appearing to be from CW and appearing to show that Jon Milby was a signatory on Debtor's CW 0449 Account, that Debtor was a signatory on a D&J Trucking account at CW and that she was the secretary of D&J Trucking.

12.  I filed my adversary proceeding 9:13-ap-01153 against John Milby and D&J Trucdking on September 19, 2013.

13.  In adversary proceeding 9:13-ap-01153, I did not include many of the transfers which I had first learned of from Mr. Beall at the 9/5/13 meeting and from the attachments to his 9/18/13 email, primarily due to the lack of documentation, the greater complexity in proving actual and fraudulent intent with respect to those transfers coupled with the Debtor's demonstrated lack of cooperation in producing requested documents . . .

14.  On October 31, 2013, Patricia A. Templeton came to my office and assembled a binder (the "Fraud Book") that consisted of tabs that had behind them excerpts of the Debtor's Schedules and Statement of Financial Affairs, as amended; summaries of how they were inaccurate in certain respects; and supporting documents that purported to show those inaccuracies. . . .

15.  Of the allegations and specific transfers alleged by the Templetons in paragraph 30 of the Complaint in adversary proceeding 9:14-ap-01132, consisting of fraudulent transfers from the Debtor's CW 0449 Account, I first learned of each alleged transfer as follows:

a.  a $30,000 check number 1072 dated February 21, 2006, payable to defendant Jon Milby and signed by defendant Jon Milby:  I first learned of the possible existence [of] this transfer from the chart prepared by the Templetons that was attached to the 9/18/13 email, but have seen no supporting documentation to date.

b.  a $10,000 check to defendant Sandra Milby dated March 13, 2006 and signed by defendant Jon Milby:  I first learned of the possible existence [of] this transfer from the chart attached to the 9/18/13 email, but have seen no supporting documentation to date.

c.  a $25,000 check to defendant Sandra Holder dated April 5, 2006 and signed by Jon Milby:  I first learned of the possible existence [of] this transfer from the chart attached to the 9/18/13 email, but have seen no supporting documentation to date.

d.  a $10,000 transfer to the 0589 Account on June 29, 2006:  I first learned of the possible existence [of] this transfer from the chart attached to the 9/18/13 email, but have seen no supporting documentation to date.

e.  a $10,000 check to defendant Jon Milby dated August 7, 2006 and signed by defendant Jon Milby:  I first learned of the possible existence [of] this transfer from the chart attached to the 9/18/13 email, but have seen no supporting documentation to date.

f.  a $17,000 transfer to the 0589 Account on August 8, 2007:  I first learned of the possible existence [of] this transfer from the chart attached to the 9/18/13 email, but have seen no supporting documentation to date.

g.  a $25,000 transfer to the 0589 Account on January 16, 2007:  I first learned of the possible existence [of] this transfer from the chart attached to the 9/18/13 email, but have seen no supporting documentation to date.

h.  a $30,000 transfer to the 0589 Account on July 18, 2008:  I first learned of the possible existence [of] a $30,000 transfer on July 18, 2007, not 2008, from the chart attached to the 9/18/13 email, but have seen no supporting documentation to date.

i.  a $12,000 transfer to the 9226 Account on September 18, 2008:  I first learned of the possible existence [of] this transfer from the chart attached to the 9/18/13 email, but have seen no supporting documentation to date.

j.  a $10,000 transfer to the 9226 Account on November 8, 2009:  I first learned of this transfer from the allegations provided to me at the 9/5/13 meeting, and first saw documentation from the bank documents attached to the 9/18/13 email.

k.  a $20,000 transfer to the 0589 Account on December 31, 2009:  I first learned of the possible existence of this transfer from the allegations provided to me at the 9/5/13 meeting and first saw documentation from the bank documents attached to the 9/18/13 email.

l.  an $875 transfer to the 9226 Account on May 27, 2011:  I first learned of this transfer from the CW-0449 Account bank statements provided to me by the Debtor on November 30, 2011, however, I did not learn any facts leading me to suspect that this transfer was fraudulent until the 9/5/13 meeting, when I was provided with the allegation that this transfer was of funds

deposited to the CW 0449 Account from a check payable to Charlene's Transportation.[22]

There is no significantly probative evidence in the record that McBeth discovered, or could have discovered, the Subject Transfers earlier than September 18, 2013, when she had only three days to evaluate the Subject Transfers before expiration of the limitations period. However, McBeth was dilatory in seeking relief after discovering facts regarding the Subject Transfers and ultimately made a conscious decision not to pursue the Subject Transfers for the benefit of the estate.

On September 19, 2013, McBeth filed a complaint against Jon A. Milby and D&J Trucking Company in Adversary No. 9:13-ap-01153-PC, McBeth v. Jon A. Milby, et al., seeking to avoid and recover alleged fraudulent conveyances, preferential transfers, and unauthorized post-petition transfers. McBeth admits that she knew of the Subject Transfers at the time the complaint was filed, but "did not include any of the potential fraudulent transfers in the Complaint . . . because [she] did not have documentation or supporting evidence concerning those transfers and/or their alleged fraudulent nature at the time.[23] McBeth testified that she "had serious concerns regarding the cost to the estate given the dates of the transfers and the Debtor's amply demonstrated lack of cooperation in producing documents."[24] On May 1, 2014, McBeth sought approval of a Settlement Agreement and Mutual Release settling Adversary No. 9:13-ap-01153-PC. By that time, McBeth had known about the Subject Transfers for approximately eight months. She had not amended her complaint in Adversary No. 9:13-ap-01153-PC. In seeking approval of the compromise, McBeth admitted that she "clearly investigated all facts even prior to the filing of the Complaint and determined there were no other transactions that should be included in the case."[25] With knowledge of the Subject Transfers, McBeth exercised her business judgment as trustee not to pursue the Subject Transfers on behalf of the estate. The

---

[22] McBeth Decl., at 2:17 – 6:15.

[23] Id. at 15:20-22.

[24] Id. at 15:22-24.

[25] Defendants' RJN, Exh. 7, at 67:9-15.

Subject Transfers were specifically excluded from the compromise approved by the court, and Adversary No. 9:13-ap-01153-PC was dismissed with prejudice on October 14, 2014.

Defendants contend that Plaintiffs are bound by McBeth's election not to pursue the Subject Transfers in Adversary No. 9:13-ap-01153-PC, citing <u>Taylor v. Hosseinpour-Esfahani (In re Hosseinpour-Esfahani)</u>, 198 B.R. 574 (9th Cir. BAP 1996) and <u>Gladstone v. Michaelis (In re QualityBuilt.Com)</u>, 2014 WL 5089040 (Bankr. S.D. Cal. 2014).  The court agrees.

In <u>Taylor</u>, the chapter 7 trustee filed his complaint after the two-year limitations period under § 546(a)(1), but argued "that as a matter of law, the two year time period was equitably tolled because he was diligent in discovering the debtors' alleged fraud and because he filed the complaint within two years after the discovery."  <u>Id.</u> at 578.  The bankruptcy court determined that the trustee discovered the cause of action three months before expiration of the two-year limitations period under § 546(a)(1), and that the claims were discovered in sufficient time to commence an avoidance action before limitations expired.  <u>Id.</u> at 579.  The Bankruptcy Appellate Panel affirmed, stating that "[d]espite the trustee's alleged diligence in discovering alleged fraud before the statute of limitations elapsed, we cannot conclude that this obviates the need for the trustee to act diligently and in a timely manner once he has the knowledge."  <u>Id.</u>

In <u>QualityBuild.Com</u>, the two year limitations period under § 546(a)(1) expired on August 11, 2012, and the chapter 7 trustee discovered alleged fraudulent transfers on April 26, 2013.  <u>Id.</u> at *3-4.  She then waited nine months after discovery before filing a complaint to avoid the transfers under §§ 544 and 548.  <u>Id.</u> at *4.  The court dismissed the trustee's complaint as to the claims under §§ 544 and 548 on the ground that they were barred by limitations and the trustee was not entitled to equitable tolling.  <u>Id.</u>  In so holding, the court determined that "the Trustee was indeed dilatory after discovering the facts underlying the Avoidance Claims, and that there [were] no extreme circumstances which warrant equitable tolling to save the Trustee from the time limitations."  <u>Id.</u> at *3.

McBeth was diligent in her administration of the estate, and due to the Debtor's misconduct did not discover the Subject Transfers until September 18, 2014.  She knew that the time to file an avoidance action would expire on September 22, 2013.  She filed Adversary No.

9:13-ap-01153-PC on September 19, 2013, and could conceivable have amended the complaint in such adversary to include the Subject Transfers during the eight month period that preceded the compromise motion.  There is no evidence that any exceptional circumstances existed after discovery of the Subject Transfers that prevented McBeth from pursuing them.  McBeth had the opportunity to seek relief with respect to the Subject Transfers, but was dilatory in doing so and ultimately elected not seek such relief in the exercise of her business judgment as trustee.  Because equitable tolling would not extend the limitations period under § 546(a)(1) for avoidance of the Subject Transfers as to McBeth, it cannot be extended as to the Plaintiffs.  The fact that the Subject Transfers were specifically excluded from the compromise approved on September 15, 2014, does not change the analysis.

Based upon the foregoing, the court will grant Defendants' motions seeking dismissal of Plaintiffs' First, Second and Third Claims for Relief as to the Subject Transfers as barred by the two-year limitations period under § 546(a)(1).

F.  Defendants' Motions Will Be Granted as to Plaintiffs' Fourth Claim for Relief for Unjust Enrichment

In their Fourth Claim for Relief, Plaintiffs allege a cause of action for unjust enrichment to recover "all amounts by which defendants have been unjustly enriched."[26]  Defendants maintain that Plaintiffs may not assert an independent cause of action for unjust enrichment as a matter of law.  The court agrees.

"[T]he majority of state and federal district courts in California do not recognize unjust enrichment as a freestanding claim." Forcellati v. Hyland's, Inc., 876 F. Supp. 2d 1155, 1166-67 (C.D. Cal. 2012); see, e.g., Swain v. CACH, LLC, 699 F. Supp. 2d 1109, 1116 (N.D. Cal. 2009) ("[U]njust enrichment is a theory of recovery, not an independent legal claim."); Levine v. Blue Shield of Cal., 189 Cal. App. 4th 1117, 1138 (2010) ("Although some California courts have suggested the existence of a separate cause of action for unjust enrichment, this court has recently held that '[t]here is no cause of action in California for unjust enrichment.'" (citations

---

[26] Complaint, 12:6-12.

omitted)); <u>McKell v. Wash. Mut., Inc.</u>, 142 Cal. App. 4th 1457, 1490 (2006) ("There is no cause of action for unjust enrichment").

"Unjust enrichment is synonymous with restitution." <u>Forcellati</u>, 876 F. Supp.2d at 1167. "While a plaintiff may allege unjust enrichment to support a restitutionary remedy in conjunction with another claim, a plaintiff cannot assert unjust enrichment as a separate cause of action under California law." <u>Swain</u>, 699 F. Supp. 2d at 1116; <u>see</u> <u>McKell</u>, 142 Cal.App.4th at 254 ("[U]njust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust.") .

Based on the foregoing, the court grants Defendants' motions for summary judgment as to Plaintiffs' Fourth Claim for Relief.  Plaintiffs' Fourth Claim for Relief will be dismissed with prejudice.

<u>CONCLUSION</u>

For the reasons stated, the court will enter an order:  (1) granting Defendants' Motions as to Plaintiffs' First, Second and Third Claims for Relief with respect to the transfers alleged in paragraph 30 of Plaintiffs' Complaint, and dismissing such claims with prejudice as barred by 11 U.S.C. § 546(a)(1); (2) granting Defendants' Motions as to Plaintiffs' First, Second and Third Claims for Relief with respect to the transfers alleged in paragraphs 31 through 35 of Plaintiffs' Complaint insofar as Plaintiffs are seeking to avoid such alleged transfers pursuant to 11 U.S.C. § 544(b) <u>and</u> California Civil Code §§ 3439.04(a)(1), <u>et al.</u>, and dismissing such claims with leave to amend; and (3) granting Defendants' Motions as to Plaintiffs' Fourth Claim for Relief for unjust enrichment and dismissing such claim with prejudice.

A separate order will be entered consistent with this memorandum.

Date: March 2, 2015

##  

Peter H. Carroll
United States Bankruptcy Judge